UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

Michael Taylor,

                  Petitioner,     CR-02-0097
    - against -              (CPS)

United States of America,      MEMORANDUM
                             OPINION AND
                Respondent.    ORDER

-----------------------------------X

SIFTON, Senior Judge.

On March 14, 2002, defendant Michael Taylor pled guilty
before this Court to filing a fraudulent tax return in violation
of 18 U.S.C. §287.  When he failed to appear at his scheduled
sentencing, a bench warrant was issued. Thereafter, he was
arrested on a different charge in New Jersey and was removed to
federal custody by writ of habeas corpus *ad prosequendum* to be
sentenced in this Court in connection with his 2002 plea.  Now
before this Court is defendant's "motion for a stay of the
proceedings" on the grounds that his Fifth Amendment rights were
violated by his production from New Jersey because the production
did not conform with the requirements of the Interstate Agreement
on Detainers Act ("IAD").  He also alleges that he has been
denied access to the courts during his incarceration at the
Metropolitan Detention Center ("MDC") and seeks appropriate
remedies.

BACKGROUND

The following facts are taken from the submissions of the parties in connection with this motion. They are undisputed.

In 1994 Michael Taylor was convicted in this Court on a plea of guilty to making false statements in violation of 18 U.S.C. §1001, as a result of his submission of a false income tax return claiming a refund. On March 2, 1994 he was sentenced to a term of incarceration of 21 months, a three-year period of supervised release term and a $50 special assessment. He was released from custody on January 1, 1995 and completed and was discharged from supervised release on January 3, 1998.

On March 14, 2002 Taylor pled guilty in this Court to a one-count indictment charging him with filing a fraudulent 1998 tax return claiming a $6,884 refund, in violation of 18 U.S.C. §287. According to the Pre-Sentence Investigation Report ("PSR") dated May 6, 2002, the defendant filed fifty-nine fraudulent tax return claims for tax year 1998, claiming tax refunds totaling more than $238,000. Using the United States Sentencing Guidelines in effect at the time the offense was committed, the Probation Department calculated the total offense level at 13, based on an intended loss amount of over $200,000, which resulted in a guideline imprisonment range of 24 to 30 months.

On June 6, 2002, Taylor objected to the PSR guideline calculation on the grounds that he believed he filed less than fifty-nine fraudulent tax returns and that, therefore, the intended loss amount was overstated.  By letter dated June 28, 2002, the government responded that the intended loss set forth in the PSR was accurate.  The government attached as exhibits to its response copies of the fraudulent W-2s that were submitted in connection with the fraudulent income tax returns.

On July 2, 2002 Taylor failed to appear at his scheduled sentencing.  After he again failed to appear for a rescheduled July 11, 2002 sentencing, an arrest warrant was issued by this Court.

On November 5, 2002 Taylor was arrested on violation of laws in New Jersey.  That same day the United States Marshals Service for the District of New Jersey filed a detainer with the Hackensack police department based on the July 11, 2002 bench warrant.  On February 3, 2003 a New Jersey grand jury charged Taylor in a 21-count indictment with passing false checks, committing two armed robberies, attempting to elude arrest, attempting and causing serious bodily injury to four uniformed police officers with a deadly weapon, and resisting arrest, all in violation of New Jersey's penal code.

On March 24, 2004 Taylor filed a habeas petition in this Court challenging the performance of his federally appointed counsel pursuant to 28 U.S.C. §2255 in the underlying criminal matter docketed 02-CR-0097. I dismissed that petition as premature, without prejudice to its renewal after Taylor had been sentenced in the underlying criminal matter.

Taylor was convicted by a New Jersey jury and his sentencing in that matter was scheduled for September 2005. However, prior to sentencing, the government removed the defendant from New Jersey to federal custody at the Metropolitan Detention Center in Brooklyn, New York ("MDC") pursuant to a federal writ of habeas corpus *ad prosequendum* in order to have the defendant appear on July 21, 2005 before this Court in the 02-CR-0097 sentencing.

On July 21, 2005 the defendant appeared before the undersigned but was removed from the courtroom after refusing to follow my instructions to be silent and let defense counsel speak for him. Based on the government's motion of August 2, 2005, on August 16, 2005 I ordered a competency evaluation of the defendant. I also set a motion schedule for the defendant to file a submission on the issue of his production in federal custody from state custody. Defense counsel requested that the defendant be permitted to file his submission by September 14, 2005. Later adjournments were granted to the defendant to submit his papers.

By report dated October 27, 2005, a forensic psychologist for the Bureau of Prisons determined that the defendant did not have a mental disease or defect under the law and that the defendant was competent to stand trial. On November 1, 2005 I ruled that the defendant was competent and could proceed *pro se* and I set a new motion schedule for defendant's motions. Thereafter, I granted defendant's request for an adjournment to file his papers and instructed him to file his motion by January 30, 2006.

## DISCUSSION

Defendant has made two motions in connection with his pending criminal case, docketed 02-CR-0097. First, he claims that his substantive due process rights under the Fifth Amendment were violated because the United States failed to follow the procedural requirements of the IAD prior to removing him from state to federal custody. Second, he claims that he is unconstitutionally being denied access to the court while he is held at MDC. Each motion is addressed in turn below.

## Violation of Defendant's Rights by issuance of Writ *Ad Prosequendum*

The defendant claims that his substantive due process rights under the Fifth Amendment were violated because the United States produced him by means of a writ of habeas corpus *ad prosequendum* without allowing him an opportunity to object prior to his transfer, as required by the IAD, *See* IAD, §2, Art. IV(a), 18 U.S.C. App. 2.[1]

The writ of habeas corpus *ad prosequendum* "allows the federal courts to secure the presence, for purposes of trial, of defendants in federal criminal cases, including defendants then in state custody." *U.S. v. Mauro*, 436 U.S. 340, 358 (1978).

The IAD addresses the situation of a prisoner serving a term of imprisonment in one state and having a detainer lodged against him in a second state. For purposes of the IAD a "state" is defined to include the United States. IAD, §2, Art. II(a). A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to

---

[1] The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided*, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: *And provided further*, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

face pending criminal charges in another jurisdiction." H.R.Rep.
No. 91-1018, P. 2 (1970); S.Rep. No. 91-1356, p. 2 (1970),
U.S.Code Cong. & Admin, News 1970, p. 4865. Prior to the adoption
of the IAD, prisoners would frequently not be prosecuted on
charges underlying a detainer until completion of their current
prison terms. *U.S. v. Ford*, 550 F.2d 732, 737(2d Cir. 1977),
*aff'd sub nom. U.S. v. Mauro*, 436 U.S. 340. Even if pending
charges were promptly prosecuted, there was virtually no
assurance that a prisoner transferred to another jurisdiction for
prosecution would be returned to complete his sentence. *Ford*, 550
F.2d at 737. These uncertainties made it difficult for the
jurisdiction having custody of the prisoner to develop a
"coherent program" for his incarceration and rehabilitation. *Id.*
at 739-40. Moreover, the existence of a detainer on a prisoner's
record frequently rendered the prisoner ineligible for
participation in special programs or even for release on parol.
*Id*. at 737-38. These adverse consequences of detainers led to the
adoption of the IAD.

The purpose of the IAD is "to encourage the expeditious and
orderly disposition of such charges and determination of the
proper status of any and all detainers based on untried
indictments, informations, or complaints." IAD, §2, Art. I. To
accomplish its goals, the IAD provides a mechanism for one state

to obtain custody of a prisoner in another state through the
filing of a detainer and then a written request for temporary
custody. IAD, §2, Art. IV(a). Within 30 days of the receipt of
the written request the Governor of the sending state may
disapprove the request either upon his own motion or upon the
motion of the prisoner. Id.  The IAD also provides that when a
prisoner is transferred from one state to another at the request
of the receiving state, the prisoner must be tried in the
receiving jurisdiction within 120 days. IAD, §2, Art. IV(c). The
prisoner also has the right to request his own transfer to
resolve any outstanding detainers, in which case the case must be
tried within 180 days. IAD, §2, Art. III. Furthermore, if a
prisoner is returned to the sending state before the receiving
state has tried him on the outstanding charges, then those
charges must be dismissed. IAD, §2, Art. IV(e).

In the present case, the United States filed a detainer with
the New Jersey police on November 5, 2002. However, the
government then removed the defendant from New Jersey to federal
custody pursuant to a federal writ of habeas corpus *ad
prosequendum* (and not pursuant to a request for temporary custody
under the IAD).

In *Mauro*, the Supreme Court examined the status of a writ of
habeas corpus *ad prosequendum* under the IAD. It concluded that

the use of a writ of habeas corpus *ad prosequendum* by the United States to obtain state prisoners is not a "detainer" within the meaning of the IAD, and accordingly, does not trigger application of its provisions. In so holding, the Supreme Court explained that the issuance of a prosequendum does not create the same concerns as the issuance of a detainer. While detainers were allowed to remain lodged against prisoners for lengthy periods of time, thus adversely effecting their prison experience, "writs of habeas corpus *ad prosequendum* . . . are immediately executed" and the IAD is "not necessary to achieve their expeditious disposition". *Mauro*, 436 U.S. at 357. However, the Court also held that when the United States files a detainer against a state prisoner and then obtains his custody by means of a writ of habeas corpus *ad prosequendum*, it has triggered the provisions of the IAD and must abide by them.

However, because the IAD applies only to sentenced prisoners, and the defendant is not a sentenced prisoner, its provisions do not apply to him. The IAD is designed to reduce "uncertainties which obstruct programs of prisoner treatment and rehabilitation." IAD §2, Art. I. Accordingly, it applies only when "a person has entered upon a term of imprisonment in a penal or correction institution of a party State. IAD, §2, Art. III, see also, IAD, §2, Art. IV(a)(applies to prisoners "serving a

term of imprisonment"). A defendant is not considered to be
serving a term of imprisonment until he has been sentenced and
has formally entered into his assigned prison facility. *U.S. v.
Roy*, 771 F.2d 54 (2d Cir. 1985)(IAD applies once defendant has
begun serving his sentence); *Lublin v. Johnson*, 628 F.Supp. 1496
(E.D.N.Y. 1986)(sentenced prisoner began his "term of
imprisonment" upon formal entry into the assigned correctional
facility); see also *U.S. v. Currier,* 836 F.2d 11, 16 (1st Cir.
1987) (the IAD applies "exclusively to prisoners who are actually
serving their sentences, and not to pre-trial detainees"); *United
States v. Wilson*, 719 F.2d 1491, 1494-95 (10th Cir.
1983)(defendant held in prison facility awaiting final sentencing
is not covered by the IAD); *Crooker v. U.S.*, 814 F.2d 75,77 (1st
Cir. 1987)(even a sentenced prisoner is not covered by the IAD
unless he has been taken to the correctional facility to commence
service of his sentence). This is because, "a detainer lodged
against a prisoner can adversely affect a prisoner's treatment
and rehabilitation only upon his entry into the assigned
facility." *Lublin v. Johnson*, 628 F.Supp. 1496, 1499 (E.D.N.Y.
1986). Thus, because the defendant had not yet been sentenced on
his New Jersey charges, he was not a person "serving a term of
imprisonment" and the provisions of the IAD do not apply to him.
Because I decide defendant's claim on this ground, I do not reach

the government's further arguments (1) that the IAD did not apply because the detainer was not "based on untried indictments, informations or complaints" as required by the IAD, §2, Arts. I, III(a), IV(a), but was rather based on a federal probation/supervised release violation warrant; and (2) that even if the IAD applied, the governor could not disapprove the transfer of the defendant because a state is forbidden by the supremacy clause from disobeying a federal writ. *Mauro*, 436 U.S. at 363.


Access to Courts

Defendant alleges that he has been denied meaningful access to the courts because (1) he is allowed access to the library "only" on fridays,[2] (2) on one occasion a piece of his legal mail was not sent out,(3) he "has the impression" that requests for waivers of costs were removed from a package containing several civil actions, (4) his legal mail has been opened outside his presence; (5) he cannot afford to pay for both typewriter ribbons and xerox copies; (6) he was once denied permission to place a legal phone call; (7) he should be allowed to use the personal

---

[2] According to the affidavit of the prison staff attorney, the defendant is allowed access to the library on the day assigned to his floor from 7:45 am to 10:40 am and from 12:30 to 3:30 am, and as a pro se defendant, is also allowed six hours of access on fridays.

computers in the library to prepare his pleadings so as to avoid typographical errors and permit easy reading; and (8) the library has neither a paralegal nor forms for certified mail, in contrast to the State and County jails where he was previously incarcerated.

A district court has jurisdiction to hear an action regarding prison conditions only when "such administrative remedies as are available are exhausted." Prison Litigation Reform Act, ("PLRA"), codified at 42 U.S.C. §1997e(a). This requirement functions "to reduce the quantity and improve the quality of prisoner suits . . . [by] afford[ing] corrections officers time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle, 534 U.S. 516, 532 (2002).* This is true regardless of whether or not the claims at issue are constitutional in nature. *Johnpoll v. Thornburgh,* 898 F.2d 849, 850 (2d Cir. 1990) (A federal prisoner alleging constitutional claims as a basis for injunctive relief is not exempt from

exhausting federal administrative remedies); *Santiago v. Meinsen*, 89 F. Supp. 2d 435 (S.D.N.Y. 2000).

To satisfy the exhaustion requirement, an inmate must challenge the prison conditions in question to the highest level of administrative review before bringing a complaint about the condition to court. *Barney v. Bureau of Prisons*, 2004 WL 2810108, *1 (E.D.N.Y. 2004). Moreover, "failure to filed a timely grievance constitutes failure to exhaust administrative remedies as required by the PLRA." *Dove v. Bator*, 2004 WL 1698426, *4 (W.D.N.Y. 2004)(collecting cases).

The administrative grievance procedure available to federal inmates is set forth at 28 CFR §542.10 *et seq* and has been summarized as follows:

> To exhaust administrative remedies in the federal prison system, prisoners must follow the four-step procedure set forth the in the Bureau of Prisons' Administrative Remedies Program. An inmate must first attempt to informally resolve his claims with prison staff. 28 C.F.R. § 542.13(a). If dissatisfied with the informal resolution, the inmate must use a designated form to submit a written "Administrative Remedy Request" to the warden within "20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a). If the formal request is denied, the inmate must appeal to the appropriate Bureau of Prisons ("BOP") Regional Director within twenty (20) days of the warden's decision. *Id.* § 542.15(a). A negative decision by the Regional Director must be appealed to the BOP Office of General Counsel within thirty (30) days.

*Barney v. Bureau of Prisons,* 2004 WL 2810108, *2 (E.D.N.Y. 2004).

The specific grievance procedure at MDC was explained to the
defendant by the Admissions and Orientation Handbook provided to
him upon his admission. It provides:

> Staff will first attempt verbal resolution of any issue
> you may present. Failing verbal resolution of the
> problem, you may request a BP-8 (Request for Informal
> Resolution) from the Correctional Counselor. You will
> fill out the BP-8 and return it to the Counselor. The
> Counselor will investigate the complaint and prepare a
> response as soon as possible. If you are not satisfied
> with the Counselor's response, you may request a BP-229
> (old BP-9) Request for Administrative Remedy.

A chart setting out the time limits for the process is then set
out. If the inmate is dissatisfied with the staff's resolution of
the informal complaint, the inmate must pursue a formal three-
tier administrative remedy process.

The defendant does not dispute that he received the A&O
handbook. He also does not dispute that in the seven months he
has been an inmate at MDC he has attempted only once to raise an
administrative complaint (concerning his mail being delayed or
tampered with) or that he voluntarily withdrew the complaint when
a satisfactory informal resolution was reached. Accordingly, he
has not exhausted his administrative remedies and this court has
no jurisdiction to consider his claims.[3]

---

[3] Despite this Court's present lack of jurisdiction it is worth noting
that even if the defendant does exhaust his administrative remedies without
finding satisfaction, his current complaints do not appear sufficient to
demonstrate that he has been denied meaningful access to the courts. In order
to prevail on a claim of lack of meaninful access to the courts a defendant

CONCLUSION

For the reasons set forth above the defendant's motions for a stay of the proceedings and to have access to the courts are denied.

**A status conference in the above captioned case is scheduled for January 24, 2007 at 12:00pm.**

The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

---

must either show that he has been denied total access to legal prepartion materials (such as mail, phone, word processing and research) so as to preclude his ability to participate meaninfully in the legal process or must show that he has suffered an actual injury.

"In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused "actual injury," *i.e.,* took or was responsible for actions that "hindered [a plaintiff's] efforts to pursue a legal claim" *Monsky v. Moraghan,* 127 F.3d 243, *247 (2d Cir. 1997)(quoting *Lewis v. Casey,* 518 U.S. 343 (1996). "He might show for example that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiences in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied . . . that he was unable to even file a complaint." *Lewis,* 518 U.S. at 351. In the present case, defendant has not shown any adverse legal result due to what he claims is a lack of meaninful access to the courts. Moreover, delays in communicating with the court or in the ability to work on a legal action are not "actual injuries." *Csoka v. County of Suffolk*, 85 F.Supp.2d 117, 120 (E.D.N.Y. 2000). Nor can the fact that defendant had access to a paralegal and legal forms in the NJ prisons show that MDC's failure to provide these amenities consitutted lack of meaningul access to courts. *Lewis,* 518 U.S. at 351 ("an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."

SO ORDERED.

Dated:     Brooklyn, New York

           January 9, 2007



                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>

                        United States District Judge